**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective
Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMILY GUTIERREZ, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,* <br><br> Plaintiff, <br><br> v. <br><br> CONSOLIDATED EDISON, INC. d/b/a Con Edison, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. d/b/a Con Edison, <br><br> Defendants. | Case No.: <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> Jury Trial Demanded |

Plaintiff EMILY GUTIERREZ ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants CONSOLIDATED EDISON, INC. d/b/a Con Edison, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. d/b/a Con Edison ("Defendants"), and state the following:

<u>**INTRODUCTION**</u>

1.       Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she is entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to a policy of compelling uncompensated off-the-clock work; (2)

statutory penalties; (3) liquidated damages; and (4) attorney's fees and costs.

2.       Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), that Plaintiff is entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to a policy of compelling uncompensated off-the-clock work; (2) statutory penalties, (3) liquidated damages, and (4) attorney's fees and costs.

3.       Plaintiff further alleges individual claims pursuant to NYLL §§ 201-D, 215 that Plaintiff is entitled to recover from Defendants for wrongful termination: (1) back wages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## **JURISDICTION AND VENUE**

4.       This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, and 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.       Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint took place in this District.

## **PARTIES**

6.       Plaintiff is a resident of Bronx County.

7.       Defendants own and manage multiple offices in New York City at the following locations:

a) 4 IRVING: 4 Irving Pl, New York, NY, 10003;
b) THE LEARNING CENTER: 4382 Vernon Blvd, Long Island City, NY, 11101;
c) CON EDISON ALBANY OFFICE: 284 State St, Albany, NY, 12210;
d) NEPTUNE YARD/CONEY ISLAND YARD: 1201 Neptune Ave, Brooklyn, NY, 11224;
e) ATLANTIC AVE/CLEVELAND ST: 2950 Atlantic Ave, Brooklyn, NY, 11207;
f) 1 METROTECH: 1 Metrotech Ctr, Brooklyn, NY, 11201;
g) 3RD AVE YARD: 222 1st St, Brooklyn, NY, 11215;
h) 30 FLATBUSH: 30 Flatbush Ave, Brooklyn, NY, 11217;
i) FOSTER AVE YARD: 8814-8826 Foster Ave, Brooklyn, NY, 11236;

j)  E 16TH: 700 East 16th St, New York, NY, 10009;
k)  150 BROADWAY: 150 Broadway, New York, NY, 10038;
l)  28 STREET YARD: 281 11th Ave, New York, NY, 10001;
m) 111 BROADWAY: 111 Broadway, 16th fl, New York, NY, 10006;
n)  HARLEM WORKOUT CENTER: 116-122 E 124th St, New York, NY, 10035;
o)  110 STREET YARD: 2141 1st Ave, New York, NY, 10029;
p)  CUSTOMER OPERATIONS WALK IN CENTER: 88-11 165th St, Jamaica, NY, 11432;
q)  CUSTOMER OPERATIONS WALK IN CENTER: 8967 162nd St, Jamaica, NY, 11432;
r)  VAN DAM METER SHOP: 4805 Van Dam St, Long Island City, NY, 11101;
s)  COLLEGE POINT YARD: 12415 31st Ave, Flushing, NY, 11354;
t)  FARRINGTON AVE YARD: 31-43 Farrington Ave, Flushing, NY, 11354;
u)  ASTORIA YARD: 3101 20th Ave, Astoria, NY, 11105;
v)  LEFRACK BUILDING: 59-17 Junction Blvd, Corona, NY 11373;
w)  VAN NEST YARD: 1615 Bronxdale Ave, Bronx, NY, 10462;
x)  GRAND CONCOURSE WALK-IN CENTER: 1775 Grand Concourse Ave, Bronx, NY 10453;
y)  BRUCKNER YARD: 1560 Bruckner Blvd, Bronx, NY, 10473;
z)  DAVIS AVE: 1 Davis Ave, Staten Island, NY, 10310;
aa) VICTORY BLVD: 4400 Victory Blvd, Staten Island, NY, 10314;
bb) PLAINFIELD: 33 Plainfield Ave, Bedford Hills, NY, 10507;
cc) EAST VIEW YARD: 315 Sawmill River Rd, Greenburgh, NY, 10595;
dd) WORTH ST YARD: 30 Worth St, Yonkers, NY, 10701;
ee) RYE YARD: 178 Theodore Fremd Ave, Rye, NY, 10580;
ff)  RYE OFFICE: 511 Theodore Fremd Ave, Rye, NY, 10580; and
gg) VALHALLA: 100 Summit Lake Dr., Suite 410 Valhalla, NY 10595

(collectively, with Con Edison offices not listed here, the "Offices").

8.      All the Offices are commonly owned by Defendants. The Offices are operated under the common control and management of Defendants. Specifically, the Offices are engaged in related activities, share common ownership and have a common business purpose:

a)  All the Offices are jointly advertised on the following websites: https://lite.conedison.com/ehs/2015-sustainability-report/map/ *See* **Exhibit A** for a screenshot of its Location page.

b)  Both Defendants share the same management and human resources personnel. Defendant CONSOLIDATED EDISON, INC. has no employees other than those

employed by its three (3) subsidiaries, which includes Defendant
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.. *See* page 3 of
**Exhibit B,** Form 10-K of CONSOLIDATED EDISON, INC and
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC ("On December
31, 2 023, Con Edison and its subsidiaries had 14,592 employees, based entirely in
the United States including 13,416 at CECONY; 1,167 at O&R and 9 at Con Edison
Transmission").

c) Defendants' common legal department and managerial staff submit combined
financial performance reports filing to the SEC. *See* page 5 of **Exhibit B** ("This
Annual Report on Form 10-K is a combined report being filed separately by two
different registrants: Consolidated Edison, Inc. (Con Edison) and Consolidated
Edison Company of New York, Inc. (CECONY). CECONY is a wholly-owned
subsidiary of Con Edison and, as such, the information in this report about
CECONY also applies to Con Edison.").

d) Defendants have one streamlined practice for hiring employees, and each of
Defendants' companies provides mutually supportive services to the other. The
hiring information and applications for all CONSOLIDATED EDISON, INC's
subsidiaries on the career page of Con Edison. *See* **Exhibit C**, Defendants' Career
Page (https://www.coned.com/en/about-us/careers). All employees apply through
a common career page and their applications are all initially evaluated by
Defendants' common management and HR personnel.

e) Defendants share common pay practices and compensation schemes with regard to
employees.

    f)   Employees at all Offices clock in and out through the same desktop-based application, which permitted Defendants to track employee's work at all Offices through a single system.

9.    Defendant CONSOLIDATED EDISON, INC d/b/a Con Edison is a domestic business corporation organized under the laws of New York State, with a principal place of business and service of process address located at 4 Irving Place, New York, NY, 10003.

10.    Defendant CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. d/b/a Con Edison is a domestic business corporation organized under the laws of New York State, with a principal place of business and service of process address located at 4 Irving Place, New York, NY, 10003.

11.    Defendant CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. is a wholly-owned subsidiary of Defendant CONSOLIDATED EDISON, INC. Defendants provide electric service to approximately 3.6 million customers in mostly all of New York City and most of Westchester County, delivers gas to approximately 1.1 million customers in Manhattan, the Bronx, parts of Queens and most of Westchester County, and operates the largest steam distribution system in the United States by producing and delivering approximately 17,427 MMlb of steam annually to approximately 1,530 customers in parts of Manhattan. *See* **Exhibit B Form 10-K** of CONSOLIDATED EDISON, INC and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.

12.    At all relevant times, each Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

13.    At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14.    Plaintiff brings claims for relief as a collective action pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt call representatives and customer service representatives employed by Defendants in New York State on or after the date that is six (6) years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

15.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure to compensate overtime wages for work performed off the clock before their scheduled shifts. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

16.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

17.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former call representatives and customer service representatives employed by Defendants in New York State on or after the date that is six (6) years before the filing of the Complaint in this case (the "Class").

18.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be

determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

19.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

20.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants, as alleged herein, of: (i) failing to pay regular and overtime wages for off-the-clock work performed before their scheduled shifts; (ii) failing to provide Class members with proper wage statements with every payment of wages; and (iii) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the NYLL. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22.    Plaintiff is able to fairly and adequately protect the interests of the Class and

have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24.     Defendants and other employers throughout the state violate the NYLL. Current

employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b.    What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

d.    Whether Defendants properly notified Plaintiff and Class members of hourly rate and overtime rate;

e.    Whether Defendants failed to pay Plaintiff and Class members for off-the-clock work performed before their scheduled shifts;

f.    Whether Defendants provided proper wage notices, at date of hiring and annually thereafter, informing Plaintiff and Class members of their proper rates of compensation and other information required to be provided on wage notice, as required under the NYLL;

9

g.    Whether Defendants provided Plaintiff and Class members proper wage statements with each payment of wages, as required under the NYLL;

h.    Whether Defendants properly compensated Plaintiff and Class members for all hours worked, including overtime hours.

## STATEMENT OF FACTS

*Wage and Hour:*

26.    In or around March 2023, Plaintiff was hired by Defendants to work as a call representative/customer service representative for Defendants' office, located at 1615 Bronxdale Ave, Bronx, NY, 10462. Plaintiff's employment with Defendants was terminated on or around September 23, 2023.

27.    As a call representative/customer service representative, Plaintiff 's duties included handling inbound and outbound calls to and from customers, interacting with customers over the phone, as well as other avenues of contact, and using Defendants' PC-based information systems in order to retrieve information to analyze customer accounts.

28.    Throughout Plaintiff 's employment with Defendants, Plaintiff was scheduled to work five (5) days per week, for a total of forty-two and half (42.5) hours each week.

29.    Throughout Plaintiff 's employment with Defendants, Plaintiff was compensated at a rate of twenty-three point seventy-five dollars ($23.75) per hour. At all times Plaintiff was paid through weekly direct deposit.

30.    At all times, regardless of location worked, Plaintiff, FLSA Plaintiffs, and Class members performed work for which they were not compensated.

31.    At all Offices, Plaintiff, FLSA Plaintiffs, and Class members clock in by logging in the computer and sending an email to the supervisor rather than through a stand-alone time-

keeping system. This meant they could not clock in until their computers were up and running. It was Defendants' policy for desktop computers to be shut down overnight and then rebooted in the morning.

32.    So neither Plaintiff nor other employees could clock in immediately upon arrival, as the computers needed to be restarted and programs needed to be opened, which took at least eight minutes, and frequently longer if the computer froze or was slow. Further, as computers were programmed to prepopulated applications needed for employees' jobs, it would usually take longer for the computers to start and get ready for employees to clock in. Consequently, Plaintiff, FLSA Plaintiffs, and Class members must work off-the-clock, waiting for the computer to reboot, programs to load, and emails to be sent, before Defendants deem Plaintiff, FLSA Plaintiffs, and Class members to have clocked in. Similarly, it always took at least three minutes for us to shut down all the programs and the computer to clock out at the end of our shift.

33.    As a result of the foregoing policies, Plaintiff , FLSA Collective Plaintiff, and Class members were time-shaved approximately 15 minutes each shift by being forced to perform uncompensated off-the-clock work.

34.    Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

35.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated its business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

36.    Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual

number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

37.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

38.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants'

failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide its wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

39.    Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total number of hours Plaintiff and Class members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

40.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

41.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

42.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS

through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

43.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

44.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

45.    Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

46.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

15

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

47.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

48.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

49.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

50.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent hes W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

51.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members all wages owed for all hours worked, including overtime, due to a policy of compelling uncompensated off-the-clock work, in violation of the FLSA and the NYLL.

52.     Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notices to Plaintiff and Class members, at the beginning of employment and annually thereafter, in violation of the NYLL.

53.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class members, in violation of the NYLL.

<u>*Plaintiff's Discrimination Claims*</u>

54.     On or around September 21, 2023, Defendants' manager Stephanie [LNU] told Plaintiff "We are going to test you for marijuana. If it is in your system, just tell me now." Under extreme pressure, Plaintiff admitted to smoking marijuana recently, which is legal in New York State. Defendants decided not to take the test themselves as Plaintiff admitted to having used

marijuana. The following Monday, Plaintiff was discharged by Defendants without any justifiable reason.

55.    Plaintiff did not use marijuana in Defendants' working hours and on Defendants' premises, nor did Plaintiff use Defendants' equipment or other property for the use of marijuana.

56.    Plaintiff has been unemployed after being discharged by Defendants.

57.    Defendants never apprised Plaintiff of their reasoning for the test and that she had the right to refuse such test.

58.    Plaintiff retained Lee Litigation Group, PLLC to represent her in this litigation and has agreed to pay the firm a reasonable fee for its services.

<strong><u>STATEMENT OF CLAIM</u></strong>

<strong>COUNT I</strong>

<strong><u>VIOLATION OF FAIR LABOR STANDARDS ACT</u></strong>

59.    Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

60.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

62.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

63.    At all relevant times, Defendants had a policy and practice that failed to pay wages to Plaintiff and FLSA Collective Plaintiffs for all hours they worked off the clock before their

18

scheduled shifts.

64.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

65.    Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages when Defendants knew or should have known such was due.

66.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

67.    As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

68.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages; plus an equal amount as liquidated damages.

**COUNT II**

**<u>VIOLATION OF NEW YORK LABOR LAW</u>**

69.    Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

70.    At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of NYLL §§ 2 and 651.

71.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff

and Class members the full amount of wages owed under the NYLL.

72.    Defendants willfully violated the rights of Plaintiff and Class members by failing to pay them for hours they worked off the clock before their scheduled shifts.

73.    Defendants knowingly and willfully operated their business with a policy of failing to provide wage and hour notices, at the date of hiring and with each change of pay rate, to Plaintiff and Class members per requirements of the NYLL.

74.    Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements as required under the NYLL.

75.    Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages; reasonable attorney's fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## VIOLATION OF NEW YORK LABOR LAW
### (PLAINTIFF'S INDIVIDUAL DISCRIMINATION CLAIMS)

76.    Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

77.    At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL §§ 2 and 651.

78.    Defendants violated Plaintiff 's statutory protected rights under the NYLL §201-D by discriminating against Plaintiff based on her legal use of cannabis. It is unlawful for Defendants to wrongfully terminate Plaintiff's employment because of her legal use of cannabis outside of her working hours, off of Defendants' premises, and without use of Defendants' equipment or other property.

2. Unless otherwise provided by law, it shall be unlawful for any employer or employment agency to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of:

> b. an individual's legal use of consumable products, including cannabis in accordance with state law, prior to the beginning or after the conclusion of the employee's work hours, and off of the employer's premises and without use of the employer's equipment or other property;

> c. an individual's legal recreational activities, including cannabis in accordance with state law, outside work hours, off of the employer's premises and without use of the employer's equipment or other property.

NYLL §201-D

79.    Defendants violated NYLL §215 by discharging Plaintiff because Plaintiff has exercised rights protected under the NYLL as Defendants discriminated against Plaintiff based on her legal use of cannabis. It is unlawful for Defendants to wrongfully terminate Plaintiff's employment because of her legal use of cannabis outside of her working hours, off of Defendants' premises, and without use of Defendants' equipment or other property.

80.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff 's protected rights under the NYLL.

81.    As a result of Defendants' unlawful employment practice under the NYLL, Plaintiff sustained injury, including economic damages, past and future emotional distress and the costs of bringing this action.

82.    Due to Defendants' violations under the NYLL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages, (3) punitive damages; and (4) attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself, respectfully requests that this Court grant the

following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages due to off-the-clock work, under the FLSA and NYLL;

d.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked per workweek, pursuant to the FLSA and NYLL;

e.  An award of back pay and compensatory damages due under the NYLL;

f.  An award of punitive damages due to the discrimination to Plaintiff, under the NYLL;

g.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.  Designation of this action as a class action pursuant to F.R.C.P. 23;

i.  Designation of Plaintiff as Class representatives; and

j.  Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: March 8, 2024

Respectfully submitted,

By: */s/ C.K. Lee*
     C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*